Case number 22-2032, United States of America v. Brian Darden Mosby, oral argument not to exceed 15 minutes per side. Alvin Keel for the appellant, you may proceed. Good morning, Your Honor. Alvin Keel on behalf of Brian Darden Mosby. Just briefly by way of with conspiracy and then 841 drug dealing and then he was convicted, excuse me, and also possession of a felony firearm and the furthest of drug trafficking. He was found guilty of conspiracy drug charges, found not guilty of possession of the firearm and furthest of drug trafficking. And what we hear today about is, by the way of a sentence of 21 months, he's completed his sentence, so we're not here for contesting the sentence or the drug convictions. The basic issue before the court today is, from my perspective, is about the money. It involves quite a bit of money in this case and obviously we, when I say we, on behalf of Mr. Mosby, would be concerned about the money and asked you whether or not there was a violation of Mr. Mosby's Fourth Amendment rights and is a violation of due process. What I'm concerned with initially is we'll take the cashier's checks. Can I ask you about the money holistically? I think the cashier's checks were part of the administrative proceeding, am I correct? Yeah, just before trial, that's what I want to call it. No, but they dismissed in the criminal proceeding and moved to the administrative proceeding and this appeal is from the criminal process, right? Not exactly. Did you file something in the administrative process? Yeah, my client actually filed a claim for the proceeds, no question. And in the administrative process? Yes, and timely. And did that go through its appellate process? No. Okay, so go back, just a quick question. It seems like one of your arguments that your client himself makes is, I've got legitimate businesses and I've got illegitimate businesses. That's fair? That's fair statement. Okay. It seems to me he had a bank account or bank accounts where he deposited the proceeds of the legitimate businesses, settlements, things like that. Fair? And he took some of the settlement money at home, but yes, fair statement. Okay, and so I know you say that, I want to come back to that, but one of the things you said is he needed money for booking concerts, but the record actually shows, because the artist wanted cash, but the record shows he artists with wire transfers multiple times. Is that fair or am I wrong? You're wrong. You're fair that they were booked by wire transfers, yes, but the question is where the money come from for the wire transfers. It came from the cash from Mr. Mosby's home. So wouldn't the record show a cash deposit followed by a wire transfer then? Yes, it does show that. Okay, tell me where. Of course I don't have it in front of me right this second, but yeah, what happened? I think on that particular concert, I don't know the artist. It was some rap artist and he transferred I think about $45,000 and some of it was cash that was submitted to the bank prior to the transfer and it's in the convoluted bank records. Yes, it is. Somebody named Fetty Wapper. Did you point to it in your brief because I don't recall that and then in your brief I thought you said that they paid with cash, not with wire transfers, but maybe I'm missing. No, I would have never convinced myself to that position. No, I didn't say that. I said that he needed cash on hand for the purpose of paying for concerts and you're making reference to one concert as we know and as we demonstrated from the proceeds, I think it was approximately $60,000 in various concerts that was his one half of the proceeds that he earned, $60,000. I think it came in $120,000, something like that. Then we have the issue, if you just want to talk about cash, but we talk about money on hand that Mr. Mosby had is the court is cognizant of the fact that there was only $79,000 he got in loans and grants from the city of Grand Rapids and other business institutions here in Grand Rapids. So we got about $79,000 there. I think he got a $90,000 from settlement when he sued this gentleman and this attorney, Christopher Newberg, got him $90,000. He had cash and I think, so you got concert earnings, $60,000, $90,000 from the Newberg lawsuit, $79,000. So we're talking about $220,000 cash that we're talking about that's available to Mr. Mosby. How do we reconcile, if I could just interrupt one second. As I understand, the district court found that Mr. Mosby agrees that he had these ledgers of, I think it was mostly marijuana sales, but certainly drug sales in the amount of, I think it was $109,000. And the district court found that those were from drug sales, as I understand it, like $73,000 and $35,000. So that's a factual finding. And are we not bound by the clearly erroneous standard in terms of the district court's finding as to that $109,000? And how does that relate to the arguments you're making with respect to all this other money? She committed error, as simple as that. I'm going to tell you why I say that. Well, you look at the case law, and I don't have to cite it because it's general knowledge, as to what can be considered as traceable proceeds in order to get to the nexus that showed there was a drug deal and then the money came from the drugs. Well, in this case, it's kind of interesting. Mr. Mosby was charged in about, I think it was a complaint, then we got to eventually a second superseding. So he was charged continuously with the time period kept to June of 2020, was a conspiracy, until we know October 27th of 2020 when he was arrested. So that's the time period of the conspiracy. So the question becomes, when you start talking about whether or not a duty in proximate cause, excuse me, and whether probable cause had been met at the district court level, we got a tight window here. So how do you say, just because I have a in my house, and I sold dope 20 years ago, there was no affirmative showing before the court that that ledger referred to drugs, not only during the period of time from June 20th, June 2020, rather, to October 27th of 2020. There's no showing. It doesn't even show that it applies to the year of 2020 or 2018. It's just speculative in nature. But you were charged with a conspiracy. The jury found you guilty of a conspiracy, and the forfeiture law says either used, I'm summarizing, used or intended to be used in furtherance of. And so it depends which prong of that the government's relying on, and I think it was Judge Beckering, but I can't remember. I'm sorry if I get it wrong. We wouldn't have to find error, as Judge Cole pointed out. We'd have to find she was clearly erroneous, which is a hard standard because even if you go back and look at the record, there's nothing that clearly shows some of these allegations, at least if it's presented to her or presented to us. For example, in your brief, when you talk about when you say he sued Fetty Rapp for his failure and was paid damages, that's true. And it went in to his account. And then you say it converted it to cash without citation to the record. So we don't know, nor did she know, where to go to see that was converted to cash and then kept at the house. He testified at the- Right, but she discredited that. She said because, simply put, she said, well, Mr. Moseby, because you said none of the money belonged or was the results of drug trafficking, then I'm going to just deny everything you said. That's not true. I'm sorry to interrupt, but one of the reasons to say your testimony isn't enough is because he did have bank records demonstrating things, and he couldn't demonstrate that. That's not true. When you say couldn't demonstrate that- He didn't provide bank records. I'm sorry, bad question. You're right. You didn't say that, but I'm saying it. Didn't provide bank records showing that he converted the $90,000 to cash. Not true. The records were voluminous. Of course it showed that. That's what we presented. How come you don't have a pin site in your brief, then? You do a pretty good job pin siting throughout that section. I'll go look. Do you know where I can find that in the bank records, where the $90,000 comes in and he takes it out? Well, yes. Do I have it in front of me at the second note? Okay. Records are- Maybe you have a bottle right there. Hundreds and hundreds of pages of bank records that were submitted. Now, I'm reserving my five minutes unless you have some more questions. No, just tell me in rebuttal where it is. I'll do that. Thank you.  Good morning, and may it please the court. My name is Austin Hanks, and I represent the United States Attorney's Office for the Western District of Michigan. The way for Mr. Mosby to make a showing of clear error would be to connect the very dots that he's unable to do so in his papers and that he's unable to do so during argument here today. It is not sufficient in order to justify the return of the cash that was forfeited after it was seized in his bedroom for him to show just the possibility of error. He has to show that the findings of the district court were clearly erroneous, and this is a significant burden on his part. The most famous expression of the clearly erroneous standard is wrong with the force of a five-week dead unrefrigerated fish. This has to be something where this court can look specifically to evidence in the record that has been established in the case and say, this is where the district court failed to connect the dots properly. He has not done that in his briefing or today, and that's significant because that means that this court is bound to affirm the findings of the district court here. Some of the money, if I could just interrupt for a second, that was found in the safe, as I understand it, was included in Chase banking envelopes, which maybe would suggest that the money came from accounts that were at Chase, funds that were withdrawn. It is possible. That's one fact that the district court acknowledged. It's also true that the drug detection dog alerted on that same safe. The government doesn't have to prove necessarily that each particular dollar bill in a pile of cash came directly from a drug transaction, as long as it can prove that a drug dealer is responsible for a certain amount of drug proceeds or that that amount of drug proceeds was collected during the course of a conspiracy or was intended to be used during the course of a conspiracy. It doesn't matter whether a particular bill has been changed out for another bill that came from a bank. And in this case, the district court was presented with ledgers that added up to, as this court noted, $109,120. That is just $3,570 away from the total amount of cash that was seized in Mr. Mosby's bedroom. And this is a bedroom that had an unregistered firearm, a digital scale, cocaine, ledgers, all inside it. There are a number of indicators there that the money that was stashed in this room was the proceeds of drug trafficking and intended to be used to further drug trafficking that Mr. Mosby was engaged in. He was also, and I remember because I asked him more than once. Before you go to the next point, the money, as you know, there are several batches of money. The money found on the dresser, about $20,000 or so, he offered a legitimate explanation for that money. Said that it was for home improvements and supposedly that was corroborated by a ledger found near the dresser. He had bank statements that he withdrew at least $15,000 in cash. And the money was not near drugs, other drugs in the dwelling and the drug doll. He did not alert on that money. Isn't there an arguable basis that maybe that batch of money was not drug proceeds? At least he offered explanation about that money, where it came from, and how he was going to use it with some corroboration? Your Honor, I... Just $20,000 that was on the dresser. With regard to the $20,000, I would say there's an argument, but the argument is not as sound as the ones that the district court found, or found more convincing. And an argument is not enough. We're dealing with a clearly erroneous standard of review. So it is true that Mr. Mosby did provide the district court with, as he concedes, hundreds of pages of banking records that showed different cash withdrawals and different deposits at different times. But he never connected the dots and said, here, here exactly is where I got this specific pile of money. Here are the receipts documenting when I withdrew it out and when it came from. There was essentially a dumping of bank records on the district court. And then the allegation that this pile of bank records establishes that the money from my bedroom was, in fact, all clean money. But, I mean, he showed why, just following up on Judge Clyde, he showed he withdrew $15,000. The drug dog didn't alert to it. Did she... I didn't remember her dealing with that nuance. And he had legitimate businesses. He paid taxes, as she noted, on them. So he withdraws the money. The dresser, ironically, doesn't alert. The dog doesn't alert to the money on it. And it's close to the $15,000 he withdrew. So it's true the dog didn't alert on that. But there was also marijuana in the same dresser, along with the firearm. And this is bills of cash that were wadded up and rolled up and stored in the dresser. This is not exactly... Even the method of storage is indicative of drug trafficking. We're talking about multiple bills that are wadded up. This is not the typical way that somebody would set aside money for home improvement or protect themselves from robbery. Mr. Mosby showed that he was well aware of the benefits of banking services because he used them. He's deposited well over six figures in a bank account. The fact that this was cash stuffed into his dresser is indicative itself that this was the proceeds of drug trafficking. And while it's true that the drug dog didn't alert on it, the absence of one particular clue doesn't mean that, therefore, this wasn't involved in drug dealing. Again, the cash was right next to marijuana. It's in the same room where Mr. Mosby had stored cocaine, a digital scale, money counter, and the other cash. And that's a part of the constellation of evidence that the district court considered. So, again, if the question is whether the district court was clearly erroneous, whether it's so obvious that the district court was wrong that this court need to reverse, that's not the case here. There are specific pieces of evidence upon which the district court relied to reach the conclusion that this cash was the proceeds of drug trafficking and that it was intended to be used as seed money for Mr. Mosby's continuing drug trafficking activities. I'll note that during Mr. Mosby's testimony during the forfeiture hearing, he would not tell the district court anywhere where his drug trafficking cash was located. And so the specter of this settlement money from the Newberg lawsuit just kept floating over whichever type of money Mr. Mosby was trying to argue was clean. So she said the settlement check payments from the Rodenhouse Law Group totaled $90,000. So you agree with that, right? And were distributed to the defendant between June 2018 and February 2019. I agree with that, your honor. And then she dropped a footnote and pointed out that the defendant agreed in asking by defense counsel, if I ordered your records from Chase Bank, would I be able to discern what dates the checks went in and verify by record when those funds came out? And he said yes. The same question I asked defense counsel, was that ever pointed to as to when they came out and the specific? No, it was not. There was just the general assertion, these records prove where the cash came from. But there was never, hey, we're going to turn to page 17 of this pile of documents or this row on this Excel spreadsheet. And you can see here, this is where this money came from. And then she found commingling. Am I correct about that? She found there's a possibility of commingling. Yes, your honor. And the intent to use the money in furtherance of the conspiracy. Yes, she made both findings, your honor. Either one of which is sufficient here. Mr. Mosby's statements that, or just refusal to acknowledge where he put the cash that he made from selling drugs was significant. Because on the one hand, he claimed to be fastidious. I mean, his words were, I'm OCD about this kind of thing. And yet when asked these specific questions about how, where is the proof that this money is clean, he couldn't point to the records. And then when I asked him, where is the money that you made from selling drugs, he refused to give a straight answer. And as the court saw from the portions of the record that we included in our briefs, he had difficulty acknowledging straightforward questions, even about basic drug evidence. So this is not somebody who was providing a lot of helpful, reliable information to the court. And she actually found not only that his testimony wasn't credible, but assessed the obstruction enhancement in calculating his guidelines range at the time of sentencing on the basis of his less than credible testimony. So the district court didn't have before it the type of robust record that would have allowed it to reach the conclusions that Mr. Mosby is urging now and urged then. It had a lot of documents, but was basically just being asked by Mr. Mosby to thread a needle that he was unwilling or unable to thread himself. So for that reason, I submit that Mr. Mosby has failed on appeal to establish that the district court's findings regarding the cash forfeiture were clearly erroneous. We haven't talked about the checks very much today, but I do want to touch on that and just emphasize that Mr. Mosby is making the wrong request in the wrong forum now. The checks were not forfeited from Mr. Mosby by operation of judicial order, nor were they forfeited from Mr. Mosby by operation of the district court's order on his motion to suppress. And that's decisive because it makes essentially any review of the district court's analysis on the motion to suppress moot. There is nothing that would change about the posture of the case, where the property is located, where the court should revisit the district court's findings on that motion to suppress ruling. And so it's precluded then from revisiting that issue. As the court mentioned to my fellow counsel here during just moments ago, Mr. Mosby did have access to an administrative forum to litigate the forfeiture of the checks and the cash that were seized from his person. And this court itself has described that very administrative process as an adequate remedy at law to contest seizure and forfeiture. That's the Matthews v. DEA case that was cited in the government's papers. In that case, there was again a seizure of financial assets from two people who were riding in a car. It was clear that those people wanted the money back. They filed a state lawsuit demanding the money back. They had attorneys that were in contact with the DEA, but they didn't engage the CAFRA process. And this court said, look, you cannot litigate these claims now in the district court. You had an adequate remedy at law to do so, and the fact that you didn't avail yourself of that opportunity means that the administrative forfeiture stands. Unless the court has any questions for me, that's all I have at the time, and I thank the courts for its attention. Thank you, and we'll hear rebuttals. By way of rebuttal, with respect to the representation that there was a finding that there was commingling and intent to use and the process, see, but what's getting lost here is there's a conspiracy charge from June of 2020 through October 27th of 2020. There was no evidence whatsoever introduced to demonstrate that any business records or that it was even mathematically possible to earn $200,000 within the time period. There was testimony from an agent, I forget, someone who testified that one completed drug sale, which were two ounces, $2,000 during the time period, and another probable drug sale for another $2,000. So now we're talking about $8,000. And then there was some allegations, there were telephone conversations about a sale may take place, it may not. So the question becomes, when you start talking about proceeds, traceable, is the word traceable, to drug activity reasonably within the time period, it's just not present. If you multiply all the drug sales traceable, we got $12,000. We're talking about hundreds of thousands now. So it's a mathematical impossibility that cannot be responded to adequately. So I'm saying the district court judge was absolutely incorrect when she said, oh, the money there in the house is traceable to drug sales. If she even felt that way, drug sales during which period of time? It's certainly not the conspiracy, which the law requires you to do, be traceable to the conspiracy itself, which it doesn't occur. So, and also, with On that point, did you offer any evidence about your client's history of earnings on drug sales from year to year? Yes, my client testified, even that during the hearing, testified he was a drug user during the period of time. He also testified that the drug sales that are referenced in the records were from I think 10, 20 years ago. They were a long time ago. They were certainly not during that period of time. And they were marijuana sales and what was the subject matter of the case was cocaine sales, no question. No question they sold cocaine during that time period. But I'm saying it's just a physical mathematical impossibility. So you just take a person's money? Same thing applies to when the government says, well, we have a right to forfeit the money under the forfeiture statute. But you can't consider how we got it. Oh, we got it as a result of illegal search and seizure. Never mind that. We still can keep it. And once we got it illegally, there's nothing you can do other than say, you may have a right, but no remedy, because we're going to block your remedy. We got your money. We gave the impression the money was going to be discussed in the criminal process. It was in the original, I think, original indictment. It was in the second indictment and the superseding indictment. Last minute, just before trial, trickery occurs. Within seven days of trial, oh, we'll dismiss the case. We'll dismiss the accounts for the bank fraud, which is obviously attached to the checks. That way, you can't discuss it and put it before the jury as an issue, which we did successfully with the gun and furtherance of drug trafficking, which where all the money was located. The jury didn't even find it related to the gun, even related to the drugs in the same room. So the likelihood of success would have been great. So what do they do? Trickery. Just before trial, say, we've charged this man with these checks. And we've had knowledge of it for over a year. And as a lawyer, you can't sit there and say, well, I'm going to object to you dismissing the charge. And we're going to proceed on bank fraud. So then they take it to the process. So it leaves us with a right, but no remedy, unless you challenge the search itself, which was improper. Thank you. I think I'm running out of time. Thank you very much. The case is submitted and there being no further cases for argument or appeals for argument, the court may be adjourned. This hour, the court is now adjourned.